=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 31
Marc A. Nicometi,
        Appellant-Respondent,
        v.
The Vineyards of Fredonia, LLC,
et al.,
        Respondents-Appellants,
et al.,
        Defendants.
-------------------------------
Scott Pfohl, et al.,
        Third-Party Plaintiffs,
        v.
Western New York
Plumbing-Ellicott Plumbing and
Remodeling Co., Inc.,
Third-Party Respondent-Appellant.


        Michael J. Hutter, Jr., for appellant-respondent.
        Robert D. Leary, for respondent-appellant Winter-Pfohl,
Inc.
        Laurence D. Behr, for respondent-appellant Vineyards of
Fredonia, LLC.
        Arthur J. Smith, for third-party respondent-appellant
Western New York Plumbing-Ellicott Plumbing and Remodeling Co.,
Inc.


STEIN, J.:

        In this personal injury action, we are called upon to

determine whether Labor Law § 240 (1) applies where plaintiff

sustained injuries after he slipped on ice and fell to the floor

while using stilts to install insulation in a ceiling.  Because

we conclude that plaintiff's accident does not fit within the

- 1 -

ambit of Labor Law § 240 (1), we modify the Appellate Division
order on that ground.

I.

One morning in January 2006, plaintiff Marc Nicometi, a
construction worker, was installing insulation in the ceilings of
a newly constructed apartment building development in the Village
of Fredonia.  Defendant The Vineyards of Fredonia, LLC (the
Vineyards) owned the premises upon which plaintiff was working.
The Vineyards was, in turn, co-owned by defendant Thomas Whitney
and certain nonparties.  The Vineyards hired defendant
Winter-Pfohl, Inc. (Winter-Pfohl), partially owned by defendant
Scott Pfohl, as the general contractor for the construction
project.  Winter-Pfohl subcontracted the insulation work to
plaintiff's employer, 84 Lumber.

To complete his installation task, plaintiff wore
stilts that elevated his feet above the concrete floor in order
for him to reach the 9- to 10-foot high ceiling.[1]  According to
plaintiff, the accident occurred when he stepped forward with one
foot, while swinging a hammer tacker above his head to affix

---

[1]  The testimony in the record varies with respect to how
high the stilts elevated plaintiff off the floor.  Plaintiff
claimed that the stilts raised him somewhere between three and
five feet off the ground, while Raymond Hilliker, plaintiff's
supervisor, testified that the stilts elevated plaintiff by only
about 18 inches.  Plaintiff's coworker, who was performing the
same task on stilts in the room with plaintiff, asserted that
both he and plaintiff had their stilts set at the lowest
available setting, which he stated was approximately three feet.

insulation between the ceiling rafters, and slipped on a thin patch of ice.  Plaintiff testified at his deposition that, prior to falling, he was aware that ice and water had accumulated on parts of the floor, and he claimed to have so informed his supervisor, Raymond Hilliker.  Plaintiff asserted that Hilliker instructed him to complete the installation despite the presence of ice.  Hilliker, by contrast, testified that he -- not plaintiff -- first noticed the ice, and that he directed plaintiff not to insulate the ceiling above the icy area.

Plaintiff subsequently commenced this action, asserting common-law negligence and Labor Law §§ 200, 240 (1), and 241 (6) claims against each aforementioned defendant.  Winter-Pfohl and Scott Pfohl later commenced a third-party action seeking indemnification or contribution from Western New York Plumbing-Ellicott Plumbing and Remodeling Co., Inc. (Western New York Plumbing), the plumbing subcontractor that worked on the premises.  Following discovery, plaintiff moved for partial summary judgment on liability with respect to his Labor Law § 240 (1) cause of action.  Winter-Pfohl and Scott Pfohl cross-moved for summary judgment dismissing plaintiff's section 240 (1) claim against Winter-Pfohl and the action in its entirety as asserted against Scott Pfohl, individually.  In support of its cross motion, Winter-Pfohl argued that plaintiff was not entitled to the protections of section 240 (1) because his injuries were caused by ice, not an elevation-related hazard.  Although The

Vineyards and Whitney opposed plaintiff's motion and supported
Winter-Pfohl's cross motion, they did not cross-move for summary
judgment.  Western New York Plumbing opposed all pending motions
as premature.

Supreme Court granted plaintiff summary judgment with
regard to liability on the Labor Law § 240 (1) claim as against
The Vineyards and Winter-Pfohl, denied Winter-Pfohl's cross
motion seeking dismissal of same, and granted Scott Pfohl's cross
motion, thereby dismissing him from the action completely.[2]  In
so holding, Supreme Court determined that section 240 (1) applied
because plaintiff's accident resulted from an elevation-related
risk as contemplated by the statute.  The court further concluded
that no questions of fact existed regarding whether plaintiff's
actions were the sole proximate cause of his injuries, despite
Hilliker's alleged instruction that plaintiff refrain from
insulating the ceiling above the ice.  The Vineyards,
Winter-Pfohl, and Western New York Plumbing (collectively,
defendants) appealed, each contending that Labor Law § 240 (1)
did not apply.

The Appellate Division, with two Justices dissenting,
modified Supreme Court's order by denying plaintiff's motion for
partial summary judgment and, as so modified, affirmed (107 AD3d
1537, 1538 [4th Dept 2013]).  The Appellate Division majority and

---

[2]  Although Whitney had not moved for summary judgment,
because plaintiff did not oppose his dismissal from the action,
the court also dismissed the complaint as asserted against him.

dissent agreed that Labor Law § 240 (1) covered plaintiff's accident (see id. at 1538-1539). The court reasoned that the accident implicated section 240 (1) because the stilts elevating plaintiff "'failed'" as he performed the insulation work, and it therefore concluded that Winter-Pfohl's cross motion for partial summary judgment was properly denied (id. at 1538, quoting Melber v 6333 Main St., 91 NY2d 759, 763-764 [1998]). The court split, however, on the issue of proximate cause, with the majority holding that questions of fact existed regarding whether plaintiff's actions were the sole proximate cause of his injuries (see 107 AD3d at 1539), and the dissent positing that plaintiff was entitled to summary judgment in his favor (see id. at 1539-1541).

The Appellate Division granted defendants and plaintiff leave to appeal and cross appeal, certifying the question whether its order was properly made (109 AD3d 1220 [4th Dept 2013]). For the reasons that follow, we answer the certified question in the negative, and modify the Appellate Division order accordingly.

II.

Defendants argue that the courts below erred in holding that Labor Law § 240 (1) applies here. According to defendants, plaintiff's accident was not the result of an elevation-related risk but, rather, was the result of an ordinary construction site danger -- the presence of ice -- which is not the type of injury covered by the statute. Defendants contend that our resolution

of this appeal is controlled by our rejection of section 240 (1)
liability in Melber v 6333 Main St. (91 NY2d 759 [1998]), which
they claim is virtually indistinguishable.  We agree.

Pursuant to Labor Law § 240 (1), owners and contractors
engaged "in the erection, demolition, repairing, altering,
painting, cleaning or pointing of a building or structure,"
except certain owners of one and two-family dwellings, must
"furnish or erect . . . scaffolding, hoists, stays, ladders,
slings, hangers, blocks, pulleys, braces, irons, ropes, and other
devices which shall be so constructed, placed and operated as to
give proper protection to a person" employed in the performance
of such labor.  Section 240 (1) aims to "protect workers and to
impose the responsibility for safety practices on those best
situated to bear that responsibility" (Ross v Curtis-Palmer
Hydro-Elec. Co., 81 NY2d 494, 500 [1993]; see Zimmer v Chemung
County Performing Arts, 65 NY2d 513, 520 [1985]).  To achieve
that goal, the statute "imposes absolute liability where the
failure to provide [proper] protection is a proximate cause of a
worker's injury" (Fabrizi v 1095 Ave. of the Ams., L.L.C., 22
NY3d 658, 662 [2014]; see Wilinski v 334 E. 92nd Hous. Dev. Fund
Corp., 18 NY3d 1, 7 [2011]).

Nevertheless, it is settled that "the extraordinary
protections of the statute in the first instance apply only to a
narrow class of dangers" (Melber, 91 NY2d at 762; see Cohen v
Memorial Sloan-Kettering Cancer Ctr., 11 NY3d 823, 825 [2008];

Toefer v Long Is. R.R., 4 NY3d 399, 407-408 [2005]).  More
specifically, Labor Law § 240 (1) relates only to "special
hazards" presenting "elevation-related risk[s]" (Rocovich v
Consolidated Edison Co., 78 NY2d 509, 514 [1991]; see Wilinski,
18 NY3d at 7; Ross, 81 NY2d at 500-501).  Liability may,
therefore, be imposed under the statute only where the
"plaintiff's injuries were the direct consequence of a failure to
provide adequate protection against a risk arising from a
physically significant elevation differential" (Runner v New York
Stock Exch., Inc., 13 NY3d 599, 603 [2009]; see Wilinksi, 18 NY3d
at 10).

        Consequently, the protections of Labor Law § 240 (1)
"do not encompass *any and all* perils that may be connected in
some tangential way with the effects of gravity" (Ross, 81 NY2d
at 501; see Ortiz v Varsity Holdings, LLC, 18 NY3d 335, 339
[2011]; Berg v Albany Ladder Co., Inc., 10 NY3d 902, 904 [2008];
Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267 [2001]).
"Rather, liability [remains] contingent upon the existence of a
hazard contemplated in section 240 (1) and the failure to use, or
the inadequacy of, a safety device of the kind enumerated
therein" (Narducci, 96 NY2d at 267; see Berg, 10 NY3d at 904).
Moreover, section 240 (1) is not applicable unless the
plaintiff's injuries result from the elevation-related risk and
the inadequacy of the safety device (see Fabrizi, 22 NY3d at 663;
Runner, 13 NY3d at 603; Cohen, 11 NY3d at 825; Narducci, 96 NY2d

at 268; <u>Melber</u>, 91 NY2d at 764).

We apply the foregoing principles to determine whether plaintiff's accident invokes the protections of Labor Law § 240 (1); to that end, the parties rightfully focus on our decision in <u>Melber</u> (91 NY2d 759), although they disagree as to its effect here. In <u>Melber</u>, the plaintiff was standing on 42-inch stilts while installing metal studs in the top of a drywall (<u>see</u> <u>id.</u> at 761). The plaintiff walked away from the drywall, without removing his stilts, in order to retrieve a tool (<u>see</u> <u>id.</u>). While walking, the plaintiff "tripped over electrical conduit protruding from the unfinished floor and fell to the ground" (<u>id.</u>). As in this case, we were asked to determine whether the plaintiff's accident fell within the purview of Labor Law § 240 (1) (<u>see</u> <u>id.</u> at 762). We held that it did not, reasoning that:

> "the conduit is a risk that can[not] be avoided by proper placement or utilization of one of the devices listed in Labor Law § 240 (1). The protective equipment envisioned by the statute is simply not designed to avert the hazard plaintiff encountered here . . . . The stilts, moreover, performed the function Labor Law § 240 (1) required of them: allowing plaintiff to safely complete his work at a height. Had they failed while plaintiff was installing the metal studs in the top of the drywall--work requiring the statute's special protections--a different case would be presented. But here, . . . injury resulted from a separate hazard -- electrical conduit protruding from the floor. Even if the stilts failed to avoid that pitfall, plaintiff's injuries allegedly flowed from a deficiency in the device that was wholly unrelated to the hazard which brought about its need in the first instance . . . ." (<u>id.</u> at 763-764 [internal quotation

marks and citation omitted]).
Thus, while the electrical conduit was certainly a "hazard in the workplace against which employees should be protected," it was not a "special" elevation-related hazard as contemplated by section 240 (1) (Melber, 91 NY2d at 763).

The dispositive question under Melber is not, as plaintiff contends, whether plaintiff was actively performing a construction task -- as compared to retrieving a tool in furtherance of that objective -- at the exact moment of his accident (see id. at 763-764; see also Saint v Syracuse Supply Co., ___ NY3d ___, ___ [2015] [decided today]; Prats v Port Auth. of N.Y. & N.J., 100 NY2d 878, 881-882 [2003]).  Indeed, while not favorable to plaintiff under the particular facts here, were we to hold that Melber draws a distinction between whether plaintiff was swinging a hammer tacker when he slipped or taking a step forward to retrieve a tool, such a holding would generally be illogical and inconsistent with the purpose and liberal interpretation of section 240 (1) to protect workers (see Prats, 100 NY2d at 881-882).  Rather, the relevant and proper inquiry is whether the hazard plaintiff encountered on the stilts was a separate hazard "'wholly unrelated to the hazard which brought about [the] need [for a safety device] in the first instance'" (Melber, 91 NY2d at 764, quoting Ross, 81 NY2d at 501).  This is because, regardless of the type of safety device involved, liability arises under Labor Law § 240 (1) only where the

plaintiff's injuries are the "direct consequence" of an elevation-related risk (Runner, 13 NY3d at 603; see Fabrizi, 22 NY3d at 662-663), not a separate and ordinary tripping or slipping hazard.

By so holding, we do not "expand[]" or "extend" Melber (dissenting op. at 1, 2). Indeed, our view of Melber is consistent with, and reinforced by, an examination of our application of this principle in subsequent cases. In Nieves v Five Boro A.C. & Refrig. Corp., where the plaintiff stepped off a ladder with one foot and tripped over a portable light, we held that Labor Law § 240 (1) did not apply because the injury was caused by a "usual and ordinary danger[] at [the] construction site," which was distinct and unrelated to the elevation-related risk that called for the ladder in the first instance (93 NY2d 914, 916 [1999]). More recently, we held that "the presence of two unconnected pipes protruding from a wall" was a "'usual and ordinary danger[]'" (Cohen, 11 NY3d at 825, quoting Nieves, 93 NY2d at 916). Thus, the plaintiff who tripped over the pipes and fell while descending a ladder was not entitled to "the 'extraordinary protections of Labor Law § 240 (1)'" (Cohen, 11 NY3d at 825, quoting Nieves, 93 NY2d at 915; see McNabb v Oot Bros., Inc., 64 AD3d 1237, 1239 [4th Dept 2009] [section 240 (1) did not apply where the plaintiff tripped over an electrical cord while working on stilts because injury was not caused by an elevation-related risk]; Russell v Widewaters S. Bay Rd. Assoc.,

289 AD2d 1025, 1025 [4th Dept 2001] [same]; Garcia v Mt. Airy Estates, Inc., 35 Misc 3d 1208[A], 2012 NY Slip Op 50615[U], *3 [Sup Ct, Richmond County 2012] [section 240 (1) inapplicable where the plaintiff tripped over "debris" on stilts]).

Here, plaintiff's accident was plainly caused by a separate hazard -- ice -- unrelated to any elevation risk. Plaintiff testified that stilts were the appropriate device for the type of work that he was undertaking, given the height of this particular ceiling. Plaintiff's testimony further established that it was the ice -- not a deficiency or inadequacy of the stilts -- that caused his fall. The ice that caused plaintiff to slip is indistinguishable from electrical conduit, a portable light, or protruding pipes, none of which are hazards that call for elevation-related protective devices. As in Melber, "[t]he protective equipment envisioned by the statute is simply not designed to avert the hazard plaintiff encountered" (91 NY2d at 763). Plaintiff's accident was, therefore, not "attributable to" a "risk[] arising from construction work site elevation differentials" (Runner, 13 NY3d at 603). Nor did the stilts "fail[]" plaintiff by, for example, collapsing or breaking, while he performed his task (Melber, 91 NY2d at 763; compare Gatto v Clifton Park Senior Living, LLC, 90 AD3d 1387, 1387 [3d Dept 2011]). Accordingly, Melber is controlling and, inasmuch as the type of injury envisioned by section 240 (1) did not occur here, plaintiff cannot recover under the protections

afforded by that statutory provision.[3]

Contrary to plaintiff's contention, our holding in Striegel v Hillcrest Hgts. Dev. Corp. (100 NY2d 974 [2003]) does not mandate a different conclusion.  There, the plaintiff slipped on frost and slid down a sloped roof, but was fortuitously stopped from falling to the ground when his pants snagged on protruding nails (see id. at 976).  We held that liability could be imposed pursuant to Labor Law § 240 (1) because no safety device had been provided and such a device "could have protected [the plaintiff] from falling as he did" (id. at 978).

Unlike here, the plaintiff's fall in Striegel was caused by an elevation-related risk because his foot slid down an elevation differential, and the pitch of the roof presented a special elevation-related hazard that resulted in the plaintiff ultimately impacting the ridge of the roof and sliding 15 to 20 feet down to the eaves (see id. at 976).  This hazard could have

---

[3]  The dissent attempts to distinguish plaintiff's case from the "'trip and fall'" cases, in which we have held that Labor Law § 240 (1) does not apply, by asserting that "the combination" of ice and stilts "presents and exacerbates elevation-related risks" (dissenting op. at 2, 3).  However, the presence of debris or objects on the floor in Melber v 6333 Main St. (91 NY2d 759, 763 [1998]) and Nieves v Five Boro A.C. & Refrig. Corp. (93 NY2d 914, 915 [1999]), like the ice here, amplified the danger inherent in working at an elevated height, but we did not find section 240 (1) to be applicable.  That is, it remains the law that the plaintiff's injuries must be caused by an elevation-related risk, "the type of extraordinary peril section 240 (1) was designed to prevent" and not a "usual and ordinary danger[] at a construction site," in order to permit recovery under that section (Nieves, 93 NY2d at 916).

been avoided by the use of "toe boards" to provide a flat path for the plaintiff to traverse (id. at 977).  The facts of Striegel would be more analogous to those presented here if the plaintiff in that case had been walking on a flat roof, and had slipped and fallen to the surface of that roof (see e.g. Auchampaugh v Syracuse Univ., 57 AD3d 1291, 1293 [3d Dept 2008]; Scharff v Sachem Cent. School Dist. at Holbrook, 53 AD3d 538, 538 [2d Dept 2008]; Favreau v Barnett & Barnett, LLC, 47 AD3d 996, 997 [3d Dept 2008]; Milligan v Allied Bldrs., Inc., 34 AD3d 1268, 1268 [4th Dept 2006]).  Likewise, a different case would be presented where a plaintiff slipped on ice while working on elevated scaffolding and fell off the scaffolding due to insufficient guardrail protection.

Plaintiff's reliance on Klein v City of New York (89 NY2d 833 [1996]) and case law concerning the placement of ladders is also unpersuasive.  In Klein, the plaintiff sustained injuries when he fell from a ladder that slipped out from underneath him because the floor had recently been flooded with a slick and greasy water, and a "film" or "'gunk'" residue remained (id. at 834).  There, we noted that Labor Law § 240 (1) "requires that safety devices such as ladders be so 'constructed, placed and operated as to give proper protection' to a worker" (id. at 834-835, quoting Labor Law § 240 [1]).  Because the defendant had "fail[ed] to ensure the proper *placement* of the ladder due to the condition of the floor," plaintiff established a prima facie case

of liability under the statute (see id. at 835 [emphasis added]).

However, as we have previously stated, Labor Law § 240 (1) "should be construed with a commonsense approach to the realities of the workplace at issue" (Salazar v Novalex Contr. Corp., 18 NY3d 134, 140 [2011]). Thus, although we are mindful that the statute is to "'be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed'" (Melber, 91 NY2d at 762, quoting Zimmer, 65 NY2d at 521), we are careful not to interpret the statute in an "illogical" manner that "would be impractical and contrary to the very work at hand" (Salazar, 18 NY3d at 140). Unlike ladders, stilts are not "placed" in a stationary position and expected to remain still to ensure their proper and safe use. Rather, stilts are intended to function as extensions of, and move with, the worker during performance of the designated task. Thus, the imposition of liability under section 240 (1) where a ladder slips due to an unsafe condition on the floor in the area where it is placed is distinguishable from the circumstances of plaintiff's accident here (see generally Melber, 91 NY2d at 762).

In sum, plaintiff cannot recover under Labor Law § 240 (1) because his injuries resulted from a slip on ice, which -- under these facts -- is a separate hazard unrelated to the elevation risk that necessitated the provision of a safety device in the first instance. Moreover, as plaintiff concedes, any alleged violations of the Industrial Code do not establish a

violation of Labor Law § 240 (1) (<u>see</u> <u>generally</u> <u>Long v</u>
<u>Forest-Fehlhaber</u>, 55 NY2d 154, 160 [1982]; <u>Perri v Gilbert</u>
<u>Johnson Enters, Ltd.</u>, 14 AD3d 681, 684 [2d Dept 2005]; <u>Blair v</u>
<u>Rosen-Michaels, Inc.</u>, 146 AD2d 863, 865 [3d Dept 1989]).  In
light of our determination, we need not address whether the
Appellate Division majority properly concluded that questions of
fact existed regarding whether plaintiff's actions constituted
the sole proximate cause of his injuries.

Accordingly, the order of the Appellate Division should
be modified, without costs, by granting defendant Winter-Pfohl's
motion for partial summary judgment dismissing the Labor Law §
240 (1) claim against it and, as so modified affirmed, and the
certified question answered in the negative.

Nicometi v Vineyards of Fredonia, LLC

No. 31

LIPPMAN, Chief Judge (dissenting):

The majority would have us believe that while ladders placed on slippery substances present an elevation-related risk, stilts under the same circumstances do not.  Because I believe stilts placed on ice create the same "elevation-related risk" as do ladders, I would hold that Labor Law § 240 (1) applies here.

The majority expands Melber v 6333 Main St. (91 NY2d 759 [1998]) by asserting that "were we to hold that Melber draws a distinction between whether plaintiff was swinging a hammer tacker when he slipped or taking a step forward to retrieve a tool, such a holding would generally be illogical and inconsistent with the purpose and liberal interpretation of section 240 (1) to protect workers."  If the majority were true to Melber, plaintiff would prevail because he was installing insulation at a height at the time of his fall.

If there is an inconsistency in Melber, it should be resolved in favor of plaintiff given the statute's intent.  As the Melber Court and the majority here aptly remind us, this Court has "repeatedly recognized" that Labor Law § 240 (1) is to be "construed as liberally as may be for the accomplishment of

- 1 -

the purpose for which it was thus framed," which is "the protection of work[ers] from injury" (<u>Melber</u>, 91 NY2d at 762, quoting <u>Zimmer v Chemung County Performing Arts, Inc.</u>, 65 NY2d 513, 520 [1985]; <u>Quigley v Thatcher</u>, 207 NY 66, 68 [1912]).  The legislature intended to "protect[] workers by placing ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor, instead of on workers, who are scarcely in a position to protect themselves from accident" (<u>Zimmer</u>, 65 NY2d at 520 [internal citations and quotation marks omitted]).

Because we are required to interpret the statute liberally to protect workers (<u>Zimmer</u>, 65 NY2d at 520), I disagree with the majority's decision to extend <u>Melber</u> to this case. <u>Melber</u> involved a worker tripping and falling over an electrical conduit in the floor while wearing stilts, which is analogous to other "trip and fall" cases in which this Court has said Labor Law § 240 (1) does not apply, such as where workers descending from ladders trip and fall over an obstruction on the ground, such as a portable light (<u>Nieves v Five Boro A.C. & Refrig. Corp.</u>, 93 NY2d 914, 916 [1999]) or "two unconnected pipes protruding from a wall" (<u>Cohen v Memorial Sloan-Kettering Cancer Ctr.</u>, 11 NY3d 823, 825 [2008]).  In <u>Nieves</u>, we held that the portable light was a "usual and ordinary danger[] at [the] construction site" (93 NY2d at 916).

The majority finds that ice "is indistinguishable from

an electrical conduit, a portable light, or protruding pipes."
However, when stilts or ladders are placed on top of ice, the
combination of the two presents and exacerbates elevation-related
risks.

We said as much in <u>Klein v City of New York</u> (89 NY2d
833 [1996]), where this Court reasoned that an employer violated
Labor Law § 240 (1) "by failing to ensure the proper placement of
the ladder due to the condition of the floor" (<u>id.</u> at 835).  The
plaintiff fell when a ladder that he had placed in a puddle of
"gunk" on the floor slipped underneath him (<u>id.</u> at 834).  In a
similar case, <u>Bland v Manocherian</u> (66 NY2d at 452 [1985]), this
Court held that Labor Law § 240 (1) applied where a worker fell
through a window when a ladder, which was placed on a "highly
polished and shiny" floor, slipped out from under him (<u>id.</u> at
460).  Ladders, like stilts, must be moved as the worker moves,
and thus placement is equally important for stilts.  To the
extent the majority indicates that the stilts themselves have to
break in order for a plaintiff to make out a Labor Law § 240 (1)
claim, that view is contradicted by the language of the statute
and by our case law.   As <u>Klein</u> and <u>Bland</u> make plain, Labor Law §
240 (1) requires that equipment be so "constructed, placed, and
operated" as to give proper protection to a worker, and where
employers order workers to use stilts or ladders in unsafe places
(ordering them essentially to work around a hazard, as occurred
here), Labor Law § 240 (1) should apply (Labor Law § 240 [1]).

For these reasons, I would not dismiss plaintiff's

Labor Law § 240 (1) cause of action.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order modified, without costs, by granting defendant Winter-
Pfohl, Inc.'s motion for partial summary judgment dismissing the
Labor Law § 240(1) claim against it and, as so modified,
affirmed, and certified question answered in the negative.
Opinion by Judge Stein.  Judges Read, Pigott, Rivera and Abdus-
Salaam concur.  Chief Judge Lippman dissents in an opinion.
Judge Fahey took no part.


Decided April 2, 2015